UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------X

SANJAY LULLA,                                          07 CV 10280 (RMB)(MHD)

        Plaintiff,

v.


EFFECTIVE MINDS, LLC, and                             Jury Trial Demanded
MANIKA GULATI,

        Defendants.


X----------------------------------------------X

### DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

THE DEFENDANTS EFFECTIVE MINDS LLC ("EM"),  and MANIKA

GULATI ("Gulati") (and collectively, "the Defendants"), by and through their attorneys,

Sabino & Sabino, P.C., as and for their Answer, Affirmative Defenses, and

Counterclaims to the Complaint filed in the above captioned by the Plaintiff Sanjay Lulla

("Lulla"), hereby allege and state, as follows:

    1. The Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 1.

    2. The Defendants admit the allegations set forth in Paragraph 2.

    3. The Defendants admit the allegations set forth in Paragraph 3.

    4. The Defendants deny knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 4, except to admit that Lulla was

employed as a recruiter for that certain company known to the Defendants as Dynpro Inc.

5. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5, except to admit that the Defendants' initial contact with Lulla was a brief telephone conversation in the context of Lulla's job as a recruiter.

6. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6, except to admit that, as part of his job as a recruiter, Lulla would identify clients such as the Defendants, attempt to match job candidates known to Lulla with such clients, the job candidates would be interviewed independently and come to terms independently with the clients, and Lulla, as a recruiter, is paid an agreed upon fee by the client.

7. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7, except to admit that Hewlett Packard Financial Services is located in, among other places, Murray Hill, New Jersey, and further admit that Defendants did transact business with the company known to the Defendants as CSI Inc., via CSI employees Nick Margonis and Steve Sales.

8. The Defendants deny the allegations set forth in Paragraph 8, except to admit that the Defendants were contracted to perform certain work for Hewlett-Packard, said work commencing in or about April, 2003, and completed in or about June, 2003.

9. The Defendants deny the allegations set forth in Paragraph 9, except to admit that there were certain limited, business communications between the Defendants and Lulla regarding the submission of time sheets, and further admit that Defendant Gulati informed Lulla that she was uncomfortable with Dynpro and would cease doing business with that company.

10. The Defendants deny the allegations set forth in Paragraph 10, except to admit that Gulati formed EM as a Delaware limited liability company on or about April 3, 2003, and Gulati was and is the sole member and owner of EM.

11. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11, except to admit that EM has always been and continues to be wholly self-funded, further admit that EM has never borrowed money, taken loans or raised capital from any outside persons or entities, except Defendant Gulati, and further admit that, to the extent Lulla made any unsecured personal loans solely to Defendant Gulati, which loans Lulla insisted Defendant Gulati accept, said loans were fully and timely repaid, as agreed to between Lulla and Defendant Gulati, each in his or her personal capacity, said loans and repayments made within the space of one (1) year.

12. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12, further deny that Lulla was entitled to any commissions or compensation whatsoever in regard to the Washington Mutual engagement, and further except to admit that the Defendants entered into certain direct contracts with vendors related to the Washington Mutual engagement, that said contracts were solely between the Defendants and said vendors, and neither Lulla nor Dynpro, his employer at the time, were direct parties, third party beneficiaries, nor assignees of said contracts, nor did Lulla or Dynpro have any interest whatsoever in said contracts.

13. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13, except to admit that the

Defendants were contacted directly by CSI for purposes of a potential engagement with Cadbury, a contract between the Defendants and CSI was entered into, services were rendered, and neither Lulla nor Dynpro, his employer at the time, were direct parties, third party beneficiaries, nor assignees of said contract, nor did Lulla or Dynpro have any interest whatsoever in said contract.

14. The Defendants deny the allegations set forth in Paragraph 14, except to admit that EM and CSI entered into a contract, services were rendered, and neither Lulla nor Dynpro, his employer at the time, were direct parties, third party beneficiaries, nor assignees of said contracts, nor did Lulla or Dynpro have any interest whatsoever in said contracts.

15. The Defendants deny the allegations set forth in Paragraph 15, except to admit that EM and CSI entered into a contract, services were rendered, and neither Lulla nor Dynpro, his employer at the time, were direct parties, third party beneficiaries, nor assignees of said contracts, nor did Lulla or Dynpro have any interest whatsoever in said contracts.

16. The Defendants deny the allegations set forth in Paragraph 16, except to admit that the Defendants rendered services for Cadbury Adams on certain contracted for projects.

17. The Defendants deny the allegations set forth in Paragraph 16, except to admit that the Defendants, in the ordinary course of business, anticipated delivering quality services to clients and fostering long term business relationships, and further admit that the so-called Cadbury Data Center Move & Migration Project was managed by Cadbury employees and an independent contractor representing Defendant EM on the project, and

the Defendants were not engaged in the decision to select the vendor, as said decision was left solely to Cadbury Adams employees.

18. The Defendants deny the allegations set forth in Paragraph 18, except to admit that said project would require the expenditure of significant professional skills, and further admit that at the initial stages of the project it was impossible to estimate economic gains from such work.

19. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19, except to deny that partnership or collaboration of any sort was ever discussed with Lulla or anyone else, and further deny that Lulla played any authorized role in the Cadbury project, and further except to admit that the Defendants entered into a direct contract with Cadbury for said project, and neither Lulla nor Dynpro, his employer at the time, were direct parties, third party beneficiaries, nor assignees of said contracts, nor did Lulla or Dynpro have any interest whatsoever in said contracts.

20. The Defendants deny the allegations set forth in Paragraph 20.

21. The Defendants deny the allegations set forth in Paragraph 21, except to admit that Defendant Gulati served merely as an advisor to Cadbury on said project, was otherwise engaged on other projects, and Cadbury employees exercised sole power and discretion with regard to this project.

22. The Defendants deny the allegations set forth in Paragraph 22, except to admit that Defendant Gulati has been the sole owner, president, CEO, and employee of Defendant EM since its inception and continuing to date.

23. The Defendants deny the allegations set forth in Paragraph 23.

24. The Defendants deny the allegations set forth in Paragraph 24.

25. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25.

26. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26, except to admit that Defendant EM, in the ordinary course of its business, transacts business with many third party vendors and individual consultants, and further admits that Defendant EM is a totally self-funded entity, as noted hereinabove.

27. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27, except to admit that with regard to said project Defendant EM was required to partner with a vendor that was "SUN certified," as in a certified vendor for Sun Microsystems, and further admits that invoices with said vendor were paid upon a agreed "Net 30 days" and/or agreed payment schedule terms.

28. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28, except to deny that Lulla was ever authorized to represent the Defendants or act on the Defendants' behalf, and further deny that Lulla ever held a position with Defendant EM or was even offered employment with the Defendants, and further except to admit that Defendant EM, after considering several "SUN certified" vendors, selected Strategic Technologies as its partner for said project, and further admit that Defendant Gulati has been the sole owner, president, CEO, and employee of Defendant EM since its inception and continuing to date.

29. The Defendants deny the allegations set forth in Paragraph 29, except to admit that Defendant EM and vendor Strategic Technologies entered into a contract regarding services to be rendered on the Cadbury project, and neither Lulla nor Dynpro, his employer at the time, were direct parties, third party beneficiaries, nor assignees of said contracts, nor did Lulla or Dynpro have any interest whatsoever in said contracts.

30. The Defendants deny the allegations set forth in Paragraph 30, except to admit that the majority of individual consultants engaged on said project were contracted for by the vendor Strategic Technologies, that Defendant Gulati, on behalf of Defendant EM, dealt directly with Strategic Technologies personnel on the Cadbury site, and Lulla had no authorized involvement whatsoever, and further admit that Defendant Gulati has been the sole owner, president, CEO, and employee of Defendant EM since its inception and continuing to date.

31. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31, except to admit that Defendant Gulati personally hand delivered the proposed project bid to Cadbury managers.

32. The Defendants deny the allegations set forth in Paragraph 32, except to admit that Defendant Gulati, on behalf of Defendant EM, dealt directly with Strategic Technologies personnel on the Cadbury site, and Defendant EM was on the Cadbury "Approved Vendor" list prior to the commencement of said project.

33. The Defendants deny the allegations set forth in Paragraph 33, except to admit that Cadbury, per the contract between the Defendants and Cadbury, received customary invoices and paid them.

34. The Defendants deny the allegations set forth in Paragraph 34.

35. The Defendants deny the allegations set forth in Paragraph 35, except to admit that Lulla made threats against the Defendants, threatening to contact and harass Defendant Gulati's family, friends, and business associates, and Lulla otherwise engaged in extortionate behavior.

36. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 35, inclusive, as stated hereinabove.

37. The Defendants deny the allegations set forth in Paragraph 37.

38. The Defendants deny the allegations set forth in Paragraph 38.

39. The Defendants deny the allegations set forth in Paragraph 39.

40. The Defendants deny the allegations set forth in Paragraph 40, except to admit that the Defendants have been injured and suffered damages for reason of, among other things, Lulla's frivolous, baseless, and illegal actions.

41. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 40, inclusive, as stated hereinabove.

42. The Defendants deny the allegations set forth in Paragraph 42.

43. The Defendants deny the allegations set forth in Paragraph 43.

44. The Defendants deny the allegations set forth in Paragraph 44.

45. The Defendants deny the allegations set forth in Paragraph 45, except to admit that the Defendants have been injured and suffered damages for reason of, among other things, Lulla's frivolous, baseless, and illegal actions.

46. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 45, inclusive, as stated hereinabove.

47. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47, except to admit that the Defendants had no knowledge and no interest whatsoever in Lulla's immigration and/or citizenship status.

48. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48, except to admit that the Defendants had no knowledge and no interest whatsoever in Lulla's immigration and/or citizenship status.

49. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49, except to admit that the Defendants had no knowledge and no interest whatsoever in Lulla's immigration and/or citizenship status.

50. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50, except to admit that the Defendants had no knowledge and no interest whatsoever in Lulla's immigration and/or citizenship status.

51. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51, except to admit that the Defendants had no knowledge and no interest whatsoever in Lulla's immigration and/or citizenship status.

52. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52, except to admit that the

Defendants had no knowledge of, interest in, or involvement in Lulla's relationship with his employer Dynpro.

53. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53, except to admit that the Defendants had no knowledge and no interest whatsoever in Lulla's immigration and/or citizenship status, and to further admit that Lulla made threats against the Defendants, threatening to contact and harass Defendant Gulati's family, friends, and business associates, and Lulla otherwise engaged in extortionate behavior.

54. The Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54, except to admit that the Defendants had no knowledge of, interest in, or involvement in Lulla's relationship with his employer Dynpro.

55. The Defendants deny the allegations set forth in Paragraph 55, except to admit that the Defendants had no knowledge of, interest in, or involvement in Lulla's relationship with his employer Dynpro.

56. The Defendants deny the allegations set forth in Paragraph 56.

57. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 56, inclusive, as stated hereinabove.

58. The Defendants deny the allegations set forth in Paragraph 58.

59. The Defendants deny the allegations set forth in Paragraph 59.

60. The Defendants deny the allegations set forth in Paragraph 60.

61. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 60, inclusive, as stated hereinabove.

62. The Defendants deny the allegations set forth in Paragraph 62.

63. The Defendants deny the allegations set forth in Paragraph 63.

64. The Defendants deny the allegations set forth in Paragraph 64.

65. The Defendants deny the allegations set forth in Paragraph 65.

66. The Defendants deny the allegations set forth in Paragraph 66, except to admit that Lulla made threats against the Defendants, threatening to contact and harass Defendant Gulati's family, friends, and business associates, and Lulla otherwise engaged in extortionate behavior.

67. The Defendants deny the allegations set forth in Paragraph 67.

68. The Defendants deny the allegations set forth in Paragraph 68.

69. The Defendants deny the allegations set forth in Paragraph 69.

70. The Defendants deny the allegations set forth in Paragraph 70.

71. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 70, inclusive, as stated hereinabove.

72. The Defendants deny the allegations set forth in Paragraph 72.

73. The Defendants deny the allegations set forth in Paragraph 73.

74. The Defendants deny the allegations set forth in Paragraph 74.

75. The Defendants deny the allegations set forth in Paragraph 75.

76. The Defendants deny the allegations set forth in Paragraph 76.

## **AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

77. Defendant Gulati is a citizen and a resident of the State of New York, County of New York, and regularly conducts business there.

78. Defendant EM is a limited liability company organized under the laws of the State of Delaware, is a resident of the State of New York, County of New York, and regularly conducts business there, to wit, from at office at 1560 Broadway, 10th Floor, New York, New York 10036.

79. Gulati is the sole founder, member, owner, officer, and principal of EM.

80. At no time in its existence did EM have any other founders, members, owners, officers or principals.

81. Lulla was never a member, owner, partner, officer or principal of EM.

82. Lulla was never a partner of Gulati.

83. There is no oral or written agreement of partnership or co-ownership of any kind between Gulati and Lulla.

84. There is no oral or written agreement of membership, ownership, partnership, principal, officer or any other relationship between EM and Lulla.

85. There was no oral or written agreement of any kind between Lulla on the one hand and EM and/or Gulati on the other regarding EM's work for Cadbury Adams.

86. To date, Gulati has never even met Lulla face to face.

87. The Defendants did transact business with Strategic Technologies in relation to work done for Cadbury Adams, to wit, contracting for the services of temporary IT professionals to service Cadbury Adams at various of its locations pertinent to the project.

88. Lulla, acting at his own admission as a "friend" and nothing else, and at his own insistence, directed the Defendants to Strategic Technologies and made the first contact with Strategic Technologies.

89. Aside from his unasked for insertion into this matter, and this introduction as a friend, Lulla played no role in the business conducted between the Defendants and Strategic Technologies.

90. Lulla performed no services for the Defendants in relation to the Cadbury Adams project, invested no money, and otherwise had no relation to that business.

91. The Defendants from time to time transacted some business with Dynpro Inc., a North Carolina-based company in the business of, among other things, supplying temporary IT professionals on a contract basis.

92. At the relevant time, Lulla was a Dynpro employee.

93. The Defendants dealt with Lulla as a Dynpro employee, and not in Lulla's individual capacity.

94. All of the Defendants' dealings with Dynpro were conducted at arms' length.

95. The Defendants dealt with Dynpro employees other than Lulla, and did not deal with Lulla exclusively.

96. There was no oral or written agreement whereby Lulla was to personally benefit from any of the Defendants' transactions with Dynpro.

97. During times relevant to this action, Lulla engaged in illegal and unauthorized actions relating to the Defendants' business.

98. Lulla illegally and without authorization held himself out to third parties as the "CEO" of EM.

99. Lulla illegally and without authorization signed certain documents claiming he was the CEO of EM.

100. For its entire existence, EM has had one and only one CEO---Gulati.

101. Upon learning of this wrongdoing, the Defendants immediately told Lulla of the patent falsity of his unilateral actions, and demanded he never again act in such a way.

102. Upon information and belief, Lulla illegally and without authorization contacted various third parties with whom the Defendants did business or were seeking to do business, and claimed to represent the Defendants and/or be a person in authority at EM.

103. Upon learning of this wrongdoing, the Defendants immediately told Lulla of the patent falsity of his unilateral actions, and demanded he never again act in such a way.

104. During times relevant to this action, Lulla engaged in inappropriate and unwanted personal advances toward Gulati.

105. Lulla would direct telephone calls, emails, and greeting cards of a personal nature toward Gulati.  Gulati rebuffed these unwanted personal advances.

106. At one point, Lulla, upon learning that Gulati was without a motor vehicle, insisted that she borrow his Ford automobile (although Lulla was in North Carolina by this time, he had apparently left his auto in New York).

107. Gulati refused, but Lulla continued to insist.  Finally, Gulati acquiesced, and drove the automobile for a very short time.

108. However, uncomfortable with the situation, Gulati told Lulla repeatedly she was not interested in borrowing his automobile, and repeatedly demanded he let her return it.  Lulla refused, and Gulati finally simply told Lulla to come and take the

automobile, whereupon Gulati left the keys to said automobile with the doorman to her Manhattan apartment building.

109. Lulla has engaged in a pattern of harassment against the Defendants to obtain a share of the Defendants' profits to which he has no lawful claim.

110. Lulla directed or caused to be directed demands for money to be made on the Defendants by certain attorneys and non-attorney agents acting at his behest to collect money.

111. Lulla brought a contract action substantially similar to the instant action in the State of North Carolina, General Court of Justice, Superior Court Division, Wake County.

112. Lulla asserted jurisdiction in the courts of North Carolina based upon the false allegation that the Defendants transacted business in North Carolina and had the requisite "minimum contacts" with North Carolina.

113. Lulla's North Carolina action was dismissed by a unanimous decision of the North Carolina Court of Appeals, for reason of lack of jurisdiction in that State.

114. Notwithstanding the dismissal of that action, Lulla retained different North Carolina attorneys, and directed them to demand money from the Defendants yet again.

115. Upon information and belief, Lulla did not inform his new North Carolina attorneys that his case has already been dismissed.

116. Lulla's new North Carolina attorneys, upon being informed of these facts, apologized and were not heard from again.

117. Lulla directed or caused to be directed demands for money to be made on the Defendants by certain non-attorney agents acting at his behest to collect money, said non-

attorney agents demanding that the Defendants not contact their attorneys and resolve this matter out of court.

118. Lulla then commenced the instant action.

119. Lulla's actions have caused the Defendants to incur significant legal fees, both here in New York and in North Carolina.

120. Lulla's actions have distracted the Defendants from the normal conduct of their business, resulting in lost opportunities.

121. Lulla's actions have cost the Defendants significant time and money, aside from legal fees and lost opportunities, for reason of distracting and interfering with the Defendants' normal conduct of business.

122. Lulla's actions have damaged the business and reputation of the Defendants, and have caused tangible economic harm to the Defendants.

123. Lulla's actions have damaged the profitability and the cash position of the Defendants, in that the Defendants have been forced to forego profitable and important growth opportunities for reason of the diversion of time, money, and energy to defending Lulla's frivolous claims, resulting in financial loss to the Defendants.

124. Lulla's actions have damaged existing and profitable business relationships previously enjoyed by the Defendants, forcing the Defendants to forego and/or cease doing business with existing vendors and customers, solely for reason of Lulla's unlawful interference.

125. Lulla's actions in disparaging and/or threatening to disparage the Defendants' reputations, both business and personal, has caused significant harm to the

Defendants, including, but not limited to, injury and damages personal to Defendant Gulati for reason of threats directed at her family and friends.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

126. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 125, inclusive, as stated hereinabove.

127. The Plaintiff fails to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Estoppel, Laches, and Waiver)

128. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 127, inclusive, as stated hereinabove.

129. The Plaintiff is barred by estoppel, laches, and waiver from raising the claims made herein, for reason of, among other things, the prior demands for relief as denied by the courts of North Carolina.

## THIRD AFFIRMATIVE DEFENSE

### (statute of frauds---common law)

130. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 129, inclusive, as stated hereinabove.

131. The Plaintiff lacks any writing to substantiate his various claims for money from the Defendants.

132. The statute of frauds demands a writing as evidence of the various obligations the Plaintiff claims are owed him by the Defendants.

133. Lacking the required writing, the Plaintiff's claims must fail.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Plead Fraud with Particularity)

134. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 133, inclusive, as stated hereinabove.

135. The Plaintiff has failed to plead fraud with particularity, as required by both Federal Rule of Civil Procedure 9 and the common law.

## FIFTH AFFIRMATIVE DEFENSE

### (statute of frauds---N.Y. General Obligations Law § 5-701)

136. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 135, inclusive, as stated hereinabove.

137. The Defendants conduct all or nearly of their business within the State of New York, and are thus bound by New York law.

138. New York General Obligations Law § 5-701, et seq., requires a writing to enforce, inter alia, a purported agreement to pay compensation for negotiating a business opportunity.

139. The Plaintiff lacks any such writing.

140. Lacking the required writing, the Plaintiff's claims must fail.


## FIRST COUNTERCLAIM

### (tortious interference with contract)

141. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 140, inclusive, as stated hereinabove.

142. The Plaintiff has tortiously interfered with the Defendants' contracts, by, among other things, illegally and without authorization, holding himself out as EM's CEO, and executing EM contracts, among them contracts with Strategic Technologies Inc., done while the Plaintiff was purporting to be EM's CEO or other responsible officer or authorized agent.

143. The Plaintiff has tortiously interfered with the Defendants' contracts, by, among other things, holding himself out to third parties as holding an interest, holding a corporate office, and/or holding himself out as an authorized agent or affiliate of EM.

144. The Plaintiff has tortiously interfered with the Defendants' contracts, by, among other things, wrongfully inserting himself, communicating with, and otherwise interfering with the Defendants' various suppliers, vendors, and strategic allies, including, but not limited to, Strategic Technologies Inc., Dynpro Inc., CSI Inc., Vinsai Software Consultants, Theta Consulting, Syntel/Skillbase, Shiva Software, and P. Nagaraj & Associates LLC.

145. The Plaintiff has tortiously interfered with the Defendants' contracts, by, among other things, damaging and destroying the Defendants' business with Dynpro, to the extent that the Defendants were forced to cease doing business with Dynpro, and thus lost important and lucrative business opportunities with Dynpro, as well as other lost opportunities with Strategic Technologies, CSI, and Cadbury Adams.

146. The Plaintiff tortiously interfered with valid and existing contracts the Defendants had entered into with third parties.

147. The Plaintiff knew or should have known of these valid and existing contracts between the Defendants and third parties.

148. The Plaintiff intentional procured or attempted to procure the breach of one or more such valid and existing contracts by the third parties thereto.

149. The Plaintiff damaged the Defendants, in an amount to be fixed at the trial of this action.

## SECOND COUNTERCLAIM

(tortious interference with a business relationship)

150. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 149, inclusive, as stated hereinabove.

151. The Defendants had important business relationships with the third parties as aforementioned.

152. The Defendants enjoyed existing business relationships with one or more third parties.

153. The Plaintiff, knowing of said relationships, intentionally interfered with one or more of such existing business relationships.

154. The Plaintiff acted with the sole purpose of harming the Defendants.

155. In the alternative, the Plaintiff utilized dishonest, unfair and/or improper means to tortiously interfere with such existing business relationships, including, but not limited to, the Plaintiff making baseless accusations that the Defendants had cheated him, wronged him, and did not pay him money he claimed he was owed.

156. These existing business relationships were in fact injured.

157. The Plaintiff damaged the Defendants, in an amount to be fixed at the trial of this action.

## THIRD COUNTERCLAIM

(injurious falsehood, trade libel)

158. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 157, inclusive, as stated hereinabove.

159. The Plaintiff has uttered various injurious falsehoods and trade libels against the Defendants, including, but not limited to, disparaging the business and capabilities of the Defendant EM, disparaging and demeaning the experience, skills, reputation, and honesty of the Defendant Gulati, disparaging the services provided by the Defendants in the ordinary course of their business, and otherwise debasing the Defendants and their business.

160. The Plaintiff has uttered additional various injurious falsehoods and trade libels against the Defendants, including, but not limited to, the Plaintiff making baseless accusations that the Defendants had cheated him, wronged him, and did not pay him money he claimed he was owed.

161. The Plaintiff has published these injurious falsehoods and trade libels.

162. The Plaintiff has made oral and defamatory injurious falsehoods and trade libels, and, upon information and belief, further disseminated them via written or electronic means.

163. The Plaintiff made said oral and defamatory injurious falsehoods and trade libels at all times relevant to this action, and, upon information and belief, continues to utter them to the present day.

164. The Plaintiff directed these injurious falsehoods and trade libels to the Defendants' services and business.

165. The Plaintiff damaged the Defendants, in an amount to be fixed at the trial of this action.

## FOURTH COUNTERCLAIM

(*prima facie* tort)

166. The Defendants repeat and reallege all of the allegations contained in Paragraphs 1 through 165, inclusive, as stated hereinabove.

167. The Plaintiff has damaged the business reputation of the Defendants, by, among other things, bringing forth baseless and vexatious litigation in the States of North Carolina and New York, retaining third parties, including non-attorneys, to harass and vex the Defendants with baseless claims for money, and by other vexatious and frivolous means.

168. The Plaintiff has damaged the business reputation of the Defendants, by, among other things, illegally and without authorization purporting to act on the Defendants' behalf as an agent thereof, illegally and without authorization purporting to be a founder, owner, member, partner, principal or be in some other relationship with the Defendants.

169. The Plaintiff has damaged the business reputation of the Defendants, by, among other things, making baseless accusations that the Defendants had cheated him, wronged him, and did not pay him money he claimed he was owed.

170. The Plaintiff made specific threats of harm against the Defendants, in particular the Defendant Gulati, including, but not limited to, threatening to call Gulati's mother in India, going to Bangalore, India where Gulati's mother still resides, calling Gulati's sister and other relations in the United States, with the stated intent of

disparaging the Defendants with claims of, among other things, that the Defendants owed him money.

171. The Plaintiff made specific threats of harm against the Defendants, including, but not limited to, threatening to call the Defendant Gulati's friends, with the stated intent of disparaging the Defendants with claims of, among other things, that the Defendants owed him money, and the Defendant Gulati was a "bad person."

172. The Plaintiff made specific threats of harm against the Defendants, including, but not limited to, threatening to call the third parties, vendors, and business associates abovementioned, with the stated intent purpose of disparaging the Defendants with claims of, among other things, that the Defendants owed him money, that the Defendants refused to pay said money, that these third parties should not do business with the Defendants, that the Defendants did not honor contracts, that the Defendants engaged in "backstabbing," and so forth.

173. The Plaintiff intentionally inflicted harm upon the Defendants.

174. The Plaintiff caused special and specific damage to the Defendants.

175. The Plaintiff intentionally inflicted said harm and caused said damages without excuse or justification.

176. The Plaintiff did so by action that would otherwise by lawful.

177. The Plaintiff intentionally inflicted harm upon the Defendants at all times relevant to this action, and, upon information and belief, continues to intentionally inflict said harm upon the Defendants to the present day.

178. The Plaintiff damaged the Defendants, in an amount to be fixed at the trial of this action.

WHEREFORE, the Defendants respectfully request that this honorable Court enter a judgment denying the Plaintiff recovery on all of the claims as set forth in the Complaint, dismissing this proceeding in its entirety, and awarding the Defendants judgment on the entirety of its Counterclaims in an amount to be determined at trial, plus interest, costs, and attorneys' fees, or, in the alternative, should the Defendants be adjudged liable to pay any amount under the claims as set forth in the Complaint, said amounts be offset by the Counterclaims, plus interest, costs, and attorneys' fees, and such other and further relief as this honorable Court deems just and proper under the circumstances.

Dated: 10 December 2007
       Mineola, New York

SABINO & SABINO, P.C.

/s/ Anthony Michael Sabino
By:_____
Anthony Michael Sabino (AMS-0578)

Attorneys for the Defendants
Effective Minds LLC, and
Manika Gulati
92 Willis Avenue, 2d Floor
Mineola, New York 11501
(516) 294-3199
fax: (516) 747-9405
email: legal-lion@earthlink.net

TO: LAW OFFICES OF STUART L. MELNICK, LLC
Attorneys for the Plaintiff Sanjay Lulla
270 Madison Avenue, Suite 1410
New York, New York 10016
Attention: Stuart L. Melnick, Esq.

AMS/dal
DRAFT EM Fed Court Answer v.2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he caused to be served by Priority Mail, prepaid, the Defendants' Answer, Affirmative Defenses, and Counterclaims upon counsel for the Plaintiff as indicated hereinbelow.

Dated: 10 December 2007
           Mineola, New York

/s/ Anthony Michael Sabino

_____
ANTHONY MICHAEL SABINO
(AMS-0578)

TO:

LAW OFFICES OF STUART L. MELNICK, LLC

Attorneys for the Plaintiff Sanjay Lulla

270 Madison Avenue, Suite 1410
New York, New York 10016
(212) 319-4200
Attention: Stuart L. Melnick, Esq.

AMS/dal
EM Lulla Cert of Service Defs Answer